Dear District Attorney Hudson:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Is a school district required to comply with the requirements of the Public Competitive Bidding Act of 1974, 61 O.S. 2001 Supp. 2007, §§ 101 B 138 ("Act"), when entering into a contract that exceeds fifty thousand dollars for the performance of routine janitorial and cleaning services at its public buildings?
 SCHOOL DISTRICTS AND THE PUBLIC COMPETITIVE BIDDING ACT
The Act requires public agencies to use competitive bidding when awarding public construction contracts that exceed fifty thousand dollars:
 A. Unless otherwise provided by law, all public construction contracts exceeding Fifty Thousand Dollars ($50,000.00) shall be let and awarded to the lowest responsible bidder, by open competitive bidding after solicitation for sealed bids, in accordance with the provisions of the Public Competitive Bidding Act of 1974. No work shall be commenced until a written contract is executed and all required bonds and insurance have been provided by the contractor to the awarding public agency.
61 O.S.Supp. 2007, § 103[61-103]. The terms "public agency" and "public construction contract" are defined as follows:
 5. "Public agency" means the State of Oklahoma, and any county, city, town, school district or other political subdivision of the state, any public trust, any public entity specifically created by the statutes of the State of Oklahoma or as a result of statutory authorization therefor, and any department, agency, board, bureau, commission, committee or authority of any of the foregoing public entities; *Page 2 
 6. "Public construction contract" or "contract" means any contract, exceeding Fifty Thousand Dollars ($50,000.00) in amount, awarded by any public agency for the purpose of making any public improvements or constructing any public building or making repairs to or performing maintenance on the same except where the improvements, construction of any building or repairs to the same are improvements or buildings leased to a person or other legal entity exclusively for private and not for public use and no public tax revenues shall be expended on or for the contract unless the public tax revenues used for the project are authorized by a majority of the voters of the applicable public agency voting at an election held for that purpose and the public tax revenues do not exceed twenty-five percent (25%) of the total project cost. The amount of public tax dollars committed to the project will not exceed a fixed amount established by resolution of the governing body prior to or concurrent with approval of the project[.]
Id. § 102 (emphasis added).
Therefore, as school districts are included within the definition of public agency, school districts must comply with the requirements of the Act when awarding public construction contracts that exceed fifty thousand dollars. According to the facts provided with your request, the amount of the contract in question exceeds fifty thousand dollars.[1]
The answer to your question turns on whether the routine janitorial and cleaning services to which you refer fall within the definition of a public construction contract. More specifically, the answer depends on whether those services result in "making any public improvements," "constructing any public building" or "making repairs" to or "performing maintenance" on the same.
You did not specify the type of janitorial or cleaning service provided under the contract referenced in your question.[2] You stated in your request letter that your question centered on an interpretation of whether those services resulted in "performing maintenance on" the buildings. See id. Therefore, for purposes of our analysis we will assume that the routine janitorial and cleaning services to which you refer do not result in the making of repairs, construction or public improvements. Accordingly, our analysis will proceed to determine whether routine janitorial and cleaning services result in "performing maintenance" which constitutes a "public construction contract" under the Act. *Page 3 
The term "maintenance" is not defined in the Act. See 61 O.S. 2001 Supp. 2007, §§ 101 B 138. In the absence of an express definition of the common words used in a statute, the words must be given their plain and ordinary meaning. 25 O.S. 2001, § 1[25-1]; City of Durant v. Cicio,50 P.3d 218, 221 (Okla. 2002). Accordingly, we must look to the plain and ordinary meaning of the term "maintenance." The word "maintain" is a transitive verb which means "to keep in a state of repair" and "preserve from failure or decline." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1362 (3d ed. 1993). The noun "maintenance" is defined as "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency." Id. The term "maintenance man" is defined as "a worker who keeps buildings, shops, or equipment in good repair." Id. Therefore, for purposes of our analysis, the term maintenance shall mean an ongoing process of keeping a building in a state of repair.[3] Accordingly, the activity of routine cleaning would not result in "performing maintenance" and thereby does not meet the definition of a public construction contract set forth in the Act.[4]
In addition to the analysis of the meaning of the words used in the Act, other sections within it suggest its provisions are not intended for routine cleaning. Section 113(B)(1), (3) of Title 61 requires successful bidders for contracts exceeding fifty thousand dollars to provide certain bonds to ensure the completion of the work, to "protect the awarding public agency against defective workmanship and materials for a period of one (1) year after acceptance of the project[.]" Section 113.1(A) provides for a retainage of ten percent of the contract amount by the public agency until the project is fifty percent complete, whereupon retainage is reduced. Section 124 provides for the inspection of the projects prior to acceptance by the public agency and Section 128 requires the contractor to carry builders' risk insurance against damage during the process of construction. These sections strongly indicate the purpose of the Act is to govern distinct construction and repair projects rather than routine janitorial and cleaning services.
It is, therefore, the official Opinion of the Attorney Generalthat:
 The Public Competitive Bidding Act of 1974, 61 O.S. 2001 Supp. 2007, §§ 101 B 138, does not apply to the awarding of a contract that exceeds fifty thousand dollars by a school district for routine janitorial and cleaning services at its public buildings, because such services do not constitute performing maintenance. *Page 4 
W.A. DREW EDMONDSON
ATTORNEY GENERAL OF OKLAHOMA
RICHARD D. OLDERBAK
ASSISTANT ATTORNEY GENERAL
[1] Letter from District Attorney Robert L. Hudson to Attorney General W.A. Drew Edmondson (Oct. 25, 2007) (on file with author)."
[2] See n. 1."
[3] Under this definition, the activity of "performing maintenance on" differs from that of "making repairs to" in that it connotes an ongoing process of repair rather than individual repair jobs. Evidence that the Legislature intended the two terms to represent distinct activities is supported by the fact that the words "or performing maintenance on" were separately added by statutory amendment in 2000. See 2000 Okla. Sess. Laws ch. 363, § 8(5)."
[4] We recognize that a person performing routine janitorial and cleaning services under a contract with a school district may incidentally perform certain activities — such as changing a light bulb or tightening a screw on a door knob — which could be characterized as "keeping in repair." However, such incidental activities would not change the underlying purpose of a contract that is primarily for cleaning services." *Page 1